UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL M. SOARES,<br>CDCR # F-39579,<br>  Plaintiff,<br><br>vs.<br><br>DANIEL PARAMO, Warden;<br>G. STRATTON, Associate Warden;<br>M. FLYNN, Correctional Counselor;<br>J. LEARD-HANSSON, Psychiatrist;<br>E. PHAN, Psychologist,<br>  Defendants. | Case No.:  13cv2971 BTM (RBB)<br><br>**ORDER DENYING DEFENDANTS'<br>PARTIAL MOTION FOR<br>SUMMARY JUDGMENT<br>PURSUANT TO<br>Fed. R. Civ. P. 56 AND<br>42 U.S.C. § 1997e(a)**<br><br>[Doc. No. 20] |

Manuel M. Soares ("Plaintiff"), is a prisoner currently incarcerated at the California Health Care Facility ("CHCF") in Stockton, California, and is proceeding pro se and in this civil action pursuant to 42 U.S.C. § 1983. Defendants are all correctional and mental health care officials employed at Richard J. Donovan Correctional Facility ("RJD") where Plaintiff was incarcerated in November 2012. *See* Doc. No. 1 ("Compl.") at 1-2, 4-5.

/ / /

1

In his Complaint, Plaintiff contends Defendants committed him to Atascadero State Hospital ("ASH") on November 27, 2012, "without appropriate procedural protections and independent/qualified assistance" in violation of his Fourteenth Amendment right to due process. *Id.* at 8, 13. In a supplemental pleading, Plaintiff alleges Defendants further violated his First Amendment right to access to the court and petition for redress by placing him in administrative segregation after he returned to RJD on December 17, 2012, in retaliation for filing an inmate grievance related to his November 27, 2012 commitment proceeding, and for filing another grievance alleging that falsified documentation had been placed in his medical file. *See* Doc. No. 7 ("Suppl. Compl.") at 9-10. Plaintiff seeks declaratory relief, an injunction prohibiting Defendants from "ever sending him to a mental hospital without due process," $10,000 in nominal damages, and $100,000 in both compensatory and punitive damages. *See* Compl. at 15, 18.

## I. Procedural History

On August 5, 2014, the Court granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and screened both Plaintiff's Complaint and his Supplemental Complaint before service as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See* Doc. No. 9. While the Court dismissed Warden Paramo without prejudice as a party on respondeat superior grounds, *id.* at 7-8, it found Plaintiff's due process and retaliation allegations against Defendants Stratton, Flynn, Hansson, and Phan sufficient to state plausible claims upon which relief may be granted. *Id.* at 9 (citing *Carty v. Nelson,* 426 F.3d 1064, 1074 (9th Cir. 2005); *Vitek v. Jones*, 445 U.S. 480, 494-97 (1980); *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012)).

After waiving personal service via the U.S. Marshal, Defendants filed a Motion for Partial Summary Judgment pursuant to FED. R. CIV. P. 56 based on Plaintiff's failure to properly exhaust available administrative remedies prior to filing suit, as is required by 42 U.S.C. § 1997e(a) (Doc. No. 20). In response to the Court's Notice to Plaintiff of Defendants' Motion for Partial Summary Judgment (Doc. No. 23), Plaintiff filed an Opposition (Doc. No. 24), as well as several additional Exhibits (Doc. No. 26),

Declarations in support of his Opposition (Doc. No. 28), and a "Notice Regarding Administrative Exhaustion" (Doc. No. 32). Defendants filed no Reply.

After careful review of Defendants' Motion, as well as all evidence submitted both by Defendants in support of summary judgment and Plaintiff in response, the Court DENIES Defendants Partial Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies for the reasons explained below.

## II. Plaintiff's Factual Allegations

On November 5, 2012, Plaintiff contends he was "called into Defendant Phan's office and asked to sign a referral form to commit him to a mental hospital." *See* Compl. at 6 ¶ 11 & Ex. A at 21. Plaintiff alleges Phan is a RJD psychologist. *Id.* at 2, 5 ¶ 7. Plaintiff "refused to sign the document and became embroiled in a verbal conflict with [] Phan," who together with Defendant Hansson, a RJD psychiatrist, had "prior to this date . . . attempted to entice Plaintiff into voluntarily going to ASH." *Id.* at 5-6 & Ex. A at 21, Mental Health Due Process Chrono ("CDCR 7480"), dated Nov. 5, 2012.

On November 16, 2012, Plaintiff claims he was called into Defendant Flynn's Office, and "informed that . . . Flynn was going to take him to a *Vitek* hearing." *Id.* at 6 ¶ 12.[1] Defendant Flynn is alleged to be a Correctional Counselor at RJD. *Id.* at 4 ¶ 6.

---

[1] In *Vitek v. Jones*, 445 U.S. 480 (1980), the Supreme Court held that an involuntary transfer of a state prisoner to a state mental hospital implicated liberty interests protected by the Due Process Clause of the Fourteenth Amendment, and therefore required certain procedural safeguards prior to transfer. *Id.* at 493-96. Pursuant to *Vitek*, CAL. CODE REGS., tit. 15 § 3369.1(a) provides that California inmates "considered for placement in a Department of Mental Health hospital pursuant to Penal Code section 2684 shall be informed of their rights to a hearing on the placement and to waive such a hearing." *Id.* Unless inmates waive the hearing, or require emergency psychiatric hospitalization, they are provided:

> (1) A written notice of the placement hearing at least 72 hours prior to the hearing.
> (2) An independent and qualified staff member to assist the inmate with their preparation for the hearing. Any costs or expenses incurred related to

Plaintiff claims Flynn "never interviewed or evaluated [him]" before the November 16, 2012 hearing, *id.*, and that he was "given no written notice before the hearing. *Id.* at 6 ¶ 12. Plaintiff alleges Flynn was introduced as his "staff assistant" at the hearing, but Flynn "did not say one word to defend [him]," "did not act in [his] best interest," and instead, "was simply present." *Id.* ¶ 13.

Plaintiff alleges Defendant Stratton, a RJD Associate Warden, "was the fact-finder decision maker" at the November 16, 2012 *Vitek* hearing, and at its conclusion, Stratton "informed Plaintiff that he was 'going to have to go with the doctor's recommendations' and commit [him] to a mental hospital." *Id.* at 7 ¶ 14.[2] Plaintiff further contends that "at

---

> independent assistance obtained by the inmate on their own shall be the sole responsibility of the inmate.
> (3) An opportunity to present documentary evidence and the oral or written testimony of witnesses, and to refute evidence and cross-examine witnesses unless the hearing officer indicates a good cause for prohibiting such evidence or witnesses.
> (4) A hearing officer who shall be the institution head or a designee, which shall be a correctional administrator, physician, psychiatrist, or psychologist who is not involved with treating the inmate.
> (5) A copy of the written decision within 72 hours after the hearing, which shall include the reason for the decision and the evidence, relied upon in making the decision.

CAL. CODE REGS., tit. 15 § 3369.1(a)(1)-(5).

[2]  California law provides that "[i]f, in the opinion of the Secretary of the Department of Corrections and Rehabilitation, the rehabilitation of any mentally ill, mentally deficient, or insane person confined in a state prison may be expedited by treatment at any one of the state hospitals under the jurisdiction of the State Department of State Hospitals, . . . the Secretary [. . .] shall certify that fact to the director of the appropriate department who shall evaluate the prisoner to determine if he or she would benefit from care and treatment in a state hospital." CAL PEN. CODE § 2684(a). "Under state law, the department of corrections bears the responsibility for the care and treatment of those convicted of crimes and confined to prison and may transfer inmates to state hospitals for care and treatment." *In re Conservatorship & Estate of Edde*, 173 Cal. App. 4th 883, 895 (2009), *as modified* (May 14, 2009) (citing CAL. PEN. CODE §§ 5054, 2684).

no time whatsoever was [he] given a written statement as to evidence relied on" or the "reasons for th[e] transfer." *Id.*; *see also* Ex. D at 4, Classification: ICC Vitek Hearing ("CDC-128G") dated Nov. 16, 2012.

Several days later, Plaintiff alleges he continued to object to Hansson and expressed his concerns related to the commitment. Specifically, Plaintiff told Hansson that he had spoken to Phan, and had opposed commitment "many times," on grounds that his brother, whom he had seen only once in ten years, was coming to visit from another country, and because he would be "devastated" to lose his culinary job at RJD. *Id.* ¶ 15. Hansson allegedly told Plaintiff he would speak with Phan, and later indicated they would "hold off on []his transfer." *Id.* However, on November 26, 2012, Phan informed Plaintiff that after having consulted with Hansson, they decided to move forward with his commitment. *Id.* ¶ 16; *see also* Ex. B at 28, Interdisciplinary Progress Notes ("CDCR Form MH-7230A"), dated Nov. 26, 2012.

Plaintiff was "transferred and committed" to ASH on November 27, 2012. Compl. at 8 ¶ 17. After arrival, Plaintiff continued to object to his commitment, and expressed his desire to return to RJD. *Id.* On December 11, 2012, Plaintiff was assessed by a Counseling Psychologist at ASH, who recommended no diagnostic changes, but also noted that "[b]ased on [Plaintiff's] past history and current reporting of symptoms[,] his depression [could] be managed without issue in corrections." *Id.*, & Ex. C at 30-31.

A week later, on December 17, 2012, Plaintiff was "transferred back" to RJD where he was "placed in administrative segregation due to no available beds." *Id.* ¶ 19. After his release from segregation, Plaintiff alleges to have begun "researching *Vitek* procedures," to have "written letters to the Prison Law Office" complaining that his commitment lacked the "appropriate procedural protections," and to have filed a CDCR 602 administrative appeal, Log No. RJD HC 13047781, challenging the decision to commit him. *Id.* at 8, ¶¶ 19-20 & Exs. D & E. On November 5, 2013, Plaintiff alleges Log No. RJD HC 13047781 was "denied at the highest level and exhausted." *Id.* at 12 ¶ 27 & Ex. E at 44-62.

In his Supplemental Complaint, Plaintiff contends that on February 27, 2013, he informed Defendant Hansson that he was "filing a complaint against him and Defendant Phan," and that he "wanted another psychiatrist appointed to [treat] him." *See* Suppl. Compl., Doc. No. 7 at 2 ¶ 2. Plaintiff claims Hansson left his cell, only to return 15-20 minutes later with a correctional officer and a "prepared CDC 7225 Form (a Refusal of Examination and/or Treatment)," which indicated Plaintiff was "refusing to take his medication." *Id.* ¶ 3. Plaintiff claims Hansson told Plaintiff to sign the CDC 7225, but Plaintiff "crossed X out Defendant Hansson's writing and began to write down his reason why he did not want to see Defendant Hansson." *Id.* Plaintiff then claims Hansson "ordered Correctional Officer S. Masterson to confiscate [the CDC 7225] and they both left." *Id.* at 3 ¶ 4.

A week later, when Plaintiff "noticed his blue pill for his depression was not being administered," he was "informed by the nurse it was discontinued." *Id.* ¶ 5. Plaintiff requested a review of his medical file and alleges to have discovered "falsified medical documentation" related to his February 27, 2013 interaction with Hansson. *Id.* Specifically, Plaintiff alleges Hansson "destroy[ed] the original CDC 7225 Form" Hansson presented to him, and "falsified documentation" in his medical file indicating he had refused medication. *Id.* at 3-6, 11-12, ¶¶ 5-6, 11-12. Plaintiff alleges to have filed a CDCR 602 administrative appeal, Log No. RJD HC 13048401, requesting a "criminal investigation" related to the incident. *Id.* at 3-6 ¶¶ 5-6, 11-12 & *id.* at 46-50, Pl.'s "602 Exhibit B." On May 15, 2013, Plaintiff was interviewed regarding Log No. RJD HC 13048401, "appointed another psychiatrist and … placed back on his medication." *Id.* at 4 ¶ 6. Because prison officials "failed to investigate" his claims related to falsified medical records, however, Plaintiff alleges he "resubmitted this appeal requesting an investigation." *Id.*

Approximately two weeks later, on June 6, 2013, Plaintiff claims he was called into the Program Office and informed by Lt. Pendleton that he was suspected of writing "graffiti . . . against a mental health clinician." *Id.* ¶ 7. Four hours after, Plaintiff was

1 "placed into administrative segregation" based on his allegedly "inappropriate behavior." *Id.* at 4 ¶ 8; *id.* at 20 "CDC 114-D," dated 6/6/13. Plaintiff was issued another CDC 114-D on August 1, 2013, informing him that he was "being retained" in segregation "pending ICC review for appropriate program and housing needs," and based in part on a confidential memorandum dated 6/7/13 which implicated him. *Id.* at 4-5 ¶¶ 8-10; *id.* at 22. Plaintiff claims he remained in segregation for six months "without any evidence or disciplinary write up," and based "on a false premise of 'inappropriate behavior on a mental health clinician,'" and that "these actions were deliberately planned" for "retaliatory purposes" due to his having initiated CDCR appeal Log Nos. RJD HC 13047781 and RJD HC 13048401. *Id.* at 9-10, ¶¶ 20-21.

## III. Defendants' Motion

Defendants seek partial summary judgment claiming "the evidence shows that Plaintiff did not exhaust the prison's administrative remedies for the retaliation claim alleged in [Plaintiff's] Supplemental Complaint." *See* Defs.' Mem. of P&As in Supp. of Mot. for Summ. J. (Doc. No. 20-1) at 2 (hereafter "Defs.' P&As"). Defendants further claim "Plaintiff did not exhaust the prison's administrative remedies with respect to Defendant Stratton." *Id.*

### A. Legal Standards

#### 1. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'[ ]-rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). *See also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting *Jones*, 549 U.S. at 218). The Ninth Circuit has consistently held, however, "that the PLRA requires only that a prisoner exhaust available remedies, and that a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 791 F.3d 1115, 1119 (9th Cir. 2015) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010); *Sapp v. Kimbrell*, 623 F.3d 813 823 (9th Cir. 2010); *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171.

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Id.*

### 2. Rule 56 Summary Judgment

Any party may move for summary judgment, and the Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207,

1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. FED. R. CIV. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also McBride*, 791 F.3d at 1117 (citing "certain limited circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable.").

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

### 3. CDCR's Exhaustion Requirements

A California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." CAL CODE REGS., tit. 15

§ 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. *See* Briggs Decl. at 3 ¶ 6. Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," CAL. CODE REGS., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated."[3] *Id.* § 3084.1(b); *see also* CDCR OP. MAN. § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

---

[3] For example, "[a] second level of review shall constitute the department's final action on appeals of disciplinary actions classified as 'administrative' as described in section 3314, or minor disciplinary infractions documented on CDC Form 128-A (rev. 4-74), Custodial Counseling Chrono, pursuant to section 3312(a)(2), and shall exhaust administrative remedy on these matters." CAL. CODE REGS., tit. 15 § 3084.7(b)(1).

Section 3084.8 further provides that the CDCR's "[t]ime limits for reviewing appeals shall commence upon the date of receipt of the appeal form by the appeals coordinator." CAL. CODE REGS., tit. 15 § 3084.8(a). With some exceptions, "[a]ll appeals shall be responded to and returned to the inmate or parolee by staff," *id.* § 3084.8(c), and first and second level responses are due "within 30 working days from date of receipt by the appeals coordinator." *Id.* § 3084.8(c)(1), (2). Third level responses are due "within 60 working days from the date of receipt by the third level Appeals Chief." *Id.* § 3084.8(c)(3). "'Working day' means a calendar day excluding Saturdays, Sundays, and official state holidays." CAL. CODE REGS., tit. 15 § 4003(j)(2). "Except for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), shall be provided an explanation of the reasons for the delay and the estimated completion date." CAL. CODE REGS., tit. 15 § 3084.9(e).

### B.     Defendants' Arguments and Evidence

Defendants admit that Plaintiff "filed multiple appeals while at RJD," but claim "he never exhausted []his administrative remedies with respect to Defendant Stratton or his retaliation claim at the third level of review." Defs.' P&As at 4. In support of their Motion, Defendants filed the Declaration of R. Briggs, the Acting Chief of the CDCR's Office of Appeals (Doc. No. 20-1) (hereafter "Briggs' Decl."), who claims a search of "any and all Third Level Inmate Appeals … accepted from [Plaintiff] from October 1, 2012 to [October 30, 2014]" and "pertaining to retaliation, obstruction of access to court, [or] Defendant Stratton," demonstrates that Plaintiff "did not exhaust . . . at the Third Level." *Id.* ¶¶ 8-10. Briggs further attests that an "accurate copy of the Inmate/Parolee Appeals Tracking System – Level III (IATS) for [Plaintiff] is attached [to his Declaration] as Exhibit 1." But no such documentation, none of the actual grievances Defendants admit Plaintiff *did* file, and none that he *attempted* to file, either at the third or any other level of administrative review, is attached to either Defendants' Motion or to Briggs's Declaration. *Id.* ¶ 11.

### C. Plaintiff's Rebuttal Arguments and Evidence

In response, Plaintiff filed an Opposition (Doc. No. 24), Exhibits (Doc. No. 16), Declarations (Doc. No. 28), and an additional "Notice Regarding Administrative Exhaustion" (Doc. No. 32), in which he claims to have filed "numerous appeals on <u>all these defendants</u> . . . only to have his filings ignored or unanswered." *See* Doc. No. 24 at 4 (emphasis original). More specifically, Plaintiff maintains that he did, in fact, exhaust all claims alleged in his Complaint related to his *Vitek* hearing and November 27, 2012 transfer to ASH via CDCR 602 Log No. RJD HC 13047781, *id.* at 9-11, and has provided evidence of such, which is marked as his Exhibit E, attached to his original Complaint. *See* Compl. at 43-62.

As to the First Amendment retaliation claims alleged in his Supplemental Complaint, Plaintiff points to CDCR 602 Log No. RJD HC 13048401, which he claims to have first filed in May 2013 "against Defendant Jan Hansson requesting an investigation regarding the falsification and shredding of [his] mental health records." *See* Doc. No. 32 at 1 & Ex. #1 at 5-27. Plaintiff claims that shortly after he filed this appeal, he was transferred to Ad-Seg, and that while in Ad-Seg he filed "numerous 602 appeals/complaints regarding his placement in A.S.U. against Defendants . . . G. Stratton, M. Flynn, Jan Hansson and Emma Phan," as well as "numerous inmate CDCR 22 request forms regarding [the status of] his appeals," but that prison officials either "d[id] not respond … within the prescribed time constraints," or "d[id] not respond at all." *Id.* at 2, *citing* Suppl. Compl. (Doc. No. 7) at 23-62, Exs. D, E, and F.

Referring to CDCR 602 Log No. RJD HC 13048401 in particular, Plaintiff contends, and has attached documentary evidence to show, that while this appeal was initially *granted* at the first level of administrative review on June 28, 2013, *id.* at 9, 14, 15,[4] that after he received the first level determination while "housed in Ad-Seg" on July

---

[4] In *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the Ninth Circuit noted, in a case filed by a California prisoner whose appeal was "partially granted" at the second level of

16, 2013, *id.* at 14, he successfully filed a second level appeal on July 22, 2013 demanding an internal affairs investigation into Defendant Hansson's alleged falsification of his medical records. *Id.* at 11-12. Plaintiff's exhibit shows his second level appeal was accepted for review on July 25, 2013, *id.* at 11, and that he was informed that a response was due by September 11, 2013. *Id.* However, Plaintiff exhibits further show that CDCR 602 Log No. RJD HC 13048401 was at some point construed to be and processed as a staff complaint,[5] and re-designated under "Appeal # CMC SC 14000751." *Id.* at 11, 23. Plaintiff's exhibits further indicate that he was not interviewed regarding CMC SC 1400751 until July 29, 2014, however, that a first/second level response, partially granting this appeal was not issued until August 8, 2014, and was not delivered to him until August 19, 2014--almost a full year after he was initially informed a response was due. *Id.* at 11, 23.[6] Plaintiff was informed in the first/second level response that if he

---

administrative review, but who was advised that he would *not* be apprised of any disciplinary action that may be taken in response to his staff complaint, *id.* at 931, that "*Booth* does not require an inmate to continue to appeal a grievance once relief is no longer 'available.'" *Id.* at 935 n.10. Therefore, a prisoner need not "over-exhaust" or "press on to exhaust further levels of review once he has received all 'available' remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available." *Id.*

[5] Pursuant to CAL. CODE REGS., tit. 15 § 3084.5(a)(4), "[w]hen an appeal is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard of conduct that could be considered misconduct as defined in subsection 3084(g), whether such misconduct is specifically alleged or not, the matter shall be referred pursuant to subsection 3084.9(i)(1) and (i)(3), to determine whether it shall be: . . . (B) [p]rocessed as a routine appeal inquiry[,] [or] (C) [r]eferred to Internal Affairs for an investigation/inquiry." *Id.* § 3084.5(a)(4)(B), (C).

[6] CAL. CODE REGS., tit. 15 § 3084.9(i), governing staff complaints as opposed to "routine appeals," provides that [a]n inmate or parolee alleging staff misconduct by a departmental employee shall forward the appeal to the appeals coordinator." *Id.* § 3084.9(i)(1). "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days." *Id.* § 3084.9(i)(3); *see also Brown*, 422 F.3d at 943 n.18 ("[W]e refuse to interpret the PLRA so narrowly as to … permit [prison

"wish[ed] to appeal the decision and/or exhaust administrative remedies," he "must submit his staff complaint through all levels of appeal review up to, and including, the Secretary's/Third Level of Review," *id.* at 24, and he did so on August 27, 2014. *Id.* at 11. This appeal was eventually denied at the Third Level on November 21, 2014. *Id.* at 7.

Plaintiff contends this evidence is sufficient to rebut Brigg's Declaration and Defendants' claims of non-exhaustion, and that summary judgment is improper because even assuming Defendants have carried their initial burden to show that the CDCR generally provides prisoners with an administrative remedy, and that he did not exhaust it--at least as to his retaliation claims, *see Williams*, 775 F.3d at 1191, he has produced evidence to show both that he did exhaust the *Vitek* claims in his Complaint, and that administrative remedies as to the retaliation claims alleged in his Supplemental Complaint were "unavailable" because he was "obstructed by prison officials" who either "failed to respond" or to timely "process his appeals." Pl.'s Opp'n (Doc. No. 24) at 16.

### D. Discussion

In order to defeat a properly supported motion seeking summary judgment based on a prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), Plaintiff must "come forward with evidence showing" either that he has properly exhausted all available administrative remedies before filing suit, or that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *Jones*, 549 U.S. at 218.

In this case, the Court finds that R. Briggs' Declaration (Doc. No. 20-2), like the evidence presented by the Defendants in *Williams*, "at most meets their burden of

---

officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") (internal quotation omitted), *citing Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002) ("[F]ailure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (affirming district court's refusal to dismiss based on inmate's failure to exhaust where Department of Corrections' failure to respond to a preliminary grievance precluded his pursuit of a formal grievance).

14

demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry." *Williams*, 775 F.3d at 1192; Briggs Decl. ¶¶ 5-7 (citing CAL. CODE REGS., tit. 15 § 3084, *et seq*.). Indeed, Plaintiff does not dispute this.

      Briggs' Declaration by itself, however, is insufficient to carry Defendants' "ultimate burden of proof" in light of both Plaintiff's sworn factual allegations[7] as to CDCR 602 RJD Log No. HC 13047781 or CDCR 602 RJD Log No. HC 13048401 (later re-designated as Staff Complaint Appeal # CMC Log No. SC 1400751), *see* Compl. at 16; Suppl. Compl. at 14, and the documentary evidence he has produced demonstrating his foray through the CDCR's multiple levels of administrative review as to those appeals. *See Williams*, 775 F.3d at 1192. This evidence, as presented by Plaintiff, and viewed in the light most favorable to him, meets his burden of production under *Albino* and *Williams* insofar as it shows either that he *did* exhaust available remedies *or* that administrative remedies—at least with respect to his retaliation claims—were not available because they proved "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172) (internal citation omitted); *see also Watts v. Nguyen*, 2015 WL 4557522 at *9 (E.D. Cal. July 27, 2015) (citing the 30-day time limit set for the submission of an inmate appeal by CAL. CODE REGS., tit. 15 § 3084.8(b), as well as the time limits set for the "completion of appeals" by prison officials at all three levels of review in § 3084.8(c), and noting that "[a]s a general principal, [the] procedural rules [governing proper exhaustion per 42

---

[7] Both Plaintiff's Complaint and his Supplemental Complaint contain factual allegations related to the exhaustion of his claims, are based on his personal knowledge, and are verified under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* Doc. No. 1 at 16; Doc. No. 7 at 14. "A verified complaint may be used as an opposing affidavit under Rule 56." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987)). In *Williams*, the Ninth Circuit considered allegations raised in a prisoner's complaint related to exhaustion as an affidavit sufficient to show that administrative remedies were "not available" because they were made under penalty of perjury. 775 F.3d at 1192 & n.11.

1 U.S.C. § 1997e(a)] must be adhered to by both inmates *and* prison officials.") (italics
2 added).

3     Briggs' Declaration, on the other hand, makes absolutely no mention of either of
4 CDCR 602 RJD Log No. HC 13047781 or CDCR 602 RJD Log No. HC 13048401 (later
5 re-designated as Staff Complaint Appeal # CMC Log No. SC 1400751), and instead
6 identifies only three *other* appeals Plaintiff is alleged to have filed (Log No. RJD-A-13-
7 00475, Log No. RJD-B-13-03740, and RJD-B-13-03384), but which were "not
8 receive[d]" at the third level of administrative review. *See* Briggs Decl. ¶ 9.  Briggs also
9 mentions another grievance, Log No. RJD-13-1772 (Third level Log No. 1300641),
10 which was "accepted" at the third level, but which, according to Briggs, contained "no
11 allegations pertaining to retaliation, obstruction of access to court, [or] Defendant
12 Stratton." *Id.* ¶ 10. Briggs further attests that a copy of the CDCR's "Inmate/Parolee
13 Appeals Tracking System" for Plaintiff, which "tracks inmate appeals accepted by [the
14 Office of Appeals] and adjudicated at the Third Level of review, as well as all appeals
15 that were received and screened out, and the reason the appeal was screened out," is
16 attached to his Declaration as Exhibit 1, *see* Briggs Decl. ¶¶ 4, 11, but no such evidence
17 is attached.

18     In addition, Defendants have filed no Reply to Plaintiff's Opposition (Doc. No.
19 24), his Exhibits (Doc. No. 26), Declarations (Doc. No. 28), or to his Notice Regarding
20 Administrative Exhaustion (Doc. No. 32), and therefore, have failed to rebut Plaintiff's
21 evidence altogether. *See Williams*, 775 F.3d at 1192; *Albino*, 747 F.3d at 1177 (finding
22 evidence insufficient to prove defendants' claims of non-exhaustion despite the fact that
23 "[a]s the movants . . ., [they] were on notice of the need to come forward with all their
24 evidence in support of this motion, and they had every incentive to do so.").

25     For these reasons, and based on this record, the Court finds that a partial summary
26 judgment based on Plaintiff's alleged failure to exhaust available administrative remedies
27 is not warranted. *Williams*, 775 F.3d at 1192 ("[P]ermitting a defendant to show that
28 remedies existed in a general sense where a plaintiff has specifically alleged that official

action prevented [him] from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear.") (quoting *Albino*, 747 F.3d at 1172).

## IV. Conclusion and Order

Based on the foregoing, the Court hereby **DENIES** Defendants' Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. No. 20) pursuant to FED. R. CIV. P. 56 and 42 U.S.C. § 1997e(a), and **ORDERS** Defendants to file a responsive pleading to both Plaintiff's Complaint (Doc. No. 1) and his Supplemental Complaint (Doc. No. 7) within the time provided by FED. R. CIV. P. 12(a).

**IT IS SO ORDERED**.

Dated: September 8, 2015

**Hon. Barry Ted Moskowitz, Chief Judge**
United States District Court